IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARQUIL D. BALL, | ) | |
| Plaintiff, | ) | Case No. 7:20-cv-00558 |
| | ) | |
| v. | ) | |
| | ) | By: Hon. Michael F. Urbanski |
| J.C. STREEVAL, et al., | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Marquil D. Ball, a federal inmate proceeding pro se, filed this civil action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). His amended complaint asserts Eighth Amendment claims of excessive force against nine Bureau of Prisons ("BOP") staff members at USP Lee. The case is presently before the court on the defendants' supplemental motion to dismiss, ECF No. 85, and Ball's motions to amend his complaint, ECF Nos. 46 and 83. For the reasons set forth below, the defendants' supplemental motion to dismiss is **GRANTED**, and Ball's motions are **DENIED**.

### BACKGROUND

### I.    Ball's Amended Complaint

Ball was previously incarcerated at USP Lee in Pennington Gap, Virginia, which is located in this judicial district. His claims are based on events that allegedly occurred at USP Lee in May 2020. The following factual summary is taken from the amended complaint and the attached supplement.

Ball alleges that he was moved to a holding cell in the Special Housing Unit ("SHU") on May 16, 2020, after angering Officer Stapleton for asking to use the phone. Suppl. to Am.

Compl, ECF No. 36-1 at 2. While in the holding cell, Ball was forced to wear paper clothing and placed in restraints. Id.

Five days later, Ball informed Warden Streeval of "the problems in [the] SHU" and of the fact that he needed to use the phone. Id. Lieutenant Hamilton subsequently threatened to harm Ball. Id. at 3. A few hours later, several officers arrived at the holding cell and directed Ball to face the wall on his knees. Id. Despite his efforts to comply with the officers' instructions, Officer J. Ewing entered the holding cell with a riot shield and used it to strike Ball. Id. Ball alleges that the other officers "began stomping and punching [him] over and over," and that Officer Stapleton made a remark suggesting that Ball was being attacked for complaining to Warden Streeval. Id.

The officers proceeded to place Ball in ambulatory restraints. Id. Ball alleges that the restraints around his ankles, waist, and wrist were "excessively tight," causing his hands, feet, and wrists to go numb. Id. Over the next few hours, officers continued to strike Ball with the riot shield, and Officer Stapleton allegedly stepped on his genitals. Id. The restraints were eventually loosened after Nurse Ashly performed a medical assessment and observed that Ball's feet and hands were discolored. Id. at 3–4. Officers then moved Ball to another holding cell for over eighteen hours, where he continued to be kept in restraints. Id. at 4.

Ball asserts that he was subjected to excessive force in violation of the Eighth Amendment and that all of the actions taken against him stemmed from asking the Warden to use the phone. Id. He seeks to recover damages for pain and suffering, sexual assault, emotional distress, mental anguish, and inhumane treatment. Id.

II.    **Defendants' Supplemental Motion to Dismiss**

The defendants initially moved to dismiss the amended complaint on several grounds, including failure to fully exhaust administrative remedies and failure to state a claim against certain defendants. ECF No. 47. On January 6, 2022, the case was dismissed without prejudice after copies of orders mailed to Ball were returned as undeliverable. ECF No. 72. Ball subsequently moved to reopen the case, and that motion was granted on June 30, 2022. ECF No. 77.

Thereafter, the defendants filed a supplemental motion to dismiss. ECF No. 85. Relying on several cases, including the Supreme Court's recent decision in <u>Egbert v. Boule</u>, 142 S. Ct. 1793 (2022), the defendants argue that a <u>Bivens</u> remedy is unavailable for Ball's claims. Ball filed a response to the supplemental motion to dismiss on November 1, 2022, to which the defendants filed a reply. ECF Nos. 94 and 96.

III.    **Ball's Motions to Amend**

Ball has filed two motions to amend. In the first motion, Ball seeks to name additional staff members at USP as defendants. ECF No. 46. In the second motion, Ball alleges that he is "currently going through acts of 'retaliation' due to this civil action." ECF No. 83 at 1. He seeks to add claims "against USP Beaumont," the facility at which he is presently incarcerated. <u>Id.</u> at 2.

STANDARDS OF REVIEW

The defendants' supplemental motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to this rule, a defendant may seek dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule

12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend a pleading with the court's leave and that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may deny leave to amend a pleading if the proposed amendments would be futile. Save Our Sound OBX, Inc. v. N.C. DOT, 914 F.3d 213, 228 (4th Cir. 2019). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss." Id. (internal quotation marks and citations omitted).

## DISCUSSION

### I.    Defendants' Supplemental Motion to Dismiss

The court will first address the supplemental motion to dismiss filed by the defendants. Based on recent Supreme Court precedent, the defendants argue that a Bivens remedy is unavailable for the claims asserted in Ball's amended complaint. For the following reasons, the court is constrained to agree.

In 1871, Congress enacted legislation that entitles an injured person to sue a state official for monetary damages if the official violates the person's constitutional rights. Ziglar v. Abassi, 137 S. Ct. 1843, 1854 (2017) (citing 42 U.S.C. § 1983). "Congress did not create an analogous statute for federal officials." Id. "Indeed, in the 100 years leading up to Bivens,

Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." Id.

In Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Iqbal, 556 U.S. at 675 (internal quotation marks and citation omitted). The Court held "that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020). Although the Court "acknowledged that the Fourth Amendment does not provide for money damages 'in so many words,'" the Court "held that it could authorize a remedy under general principles of federal jurisdiction." Ziglar, 137 S. Ct. at 1854 (quoting Bivens, 403 U.S. at 396).

In the decade following Bivens, the Supreme Court recognized two additional contexts in which an individual could pursue a claim for damages against federal officials for violating the individual's constitutional rights. In Davis v. Passman, 442 U.S. 228 (1979), the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. And in Carlson v. Green, 446 U.S. 14 (1980), the Court held that the Eighth Amendment provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal prison officials to treat the prisoner's asthma. "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 137 S. Ct. at 1855.

In the 42 years following <u>Carlson</u>, the Supreme Court has repeatedly "declined . . . to imply a similar cause of action for other alleged constitutional violations." <u>Egbert v. Boule</u>, 142 S. Ct. 1799–1800 (2022) (collecting cases). "And in the last 5 years in particular, it has handed down a trilogy of opinions not only expressing regret over its <u>Bivens</u> cases but also demonstrating hostility to any expansion of them." <u>Tate v. Harmon</u>, 54 F.4th 839, 843 (4th Cir. 2022) (citing <u>Ziglar</u>, 137 S. Ct. at 1857; <u>Hernandez</u>, 140 S. Ct. at 742–43; <u>Egbert</u>, 142 S. Ct. at 1802). The Supreme Court's recent decisions explain that it "has come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" <u>Egbert</u>, 142 S. Ct. at 1802 (quoting <u>Hernandez</u>, 140 S. Ct. at 741). The Court has observed that "creating a cause of action is a legislative endeavor" and that "the Judiciary's authority to do so at all is, at best, uncertain." <u>Egbert</u>, 142 S. Ct. at 1802–03. "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity." <u>Ziglar</u>, 137 S. Ct. at 1857 (quoting <u>Iqbal</u>, 556 U.S. at 675); <u>see also</u> <u>Egbert</u>, 142 S. Ct. at 1803 ("When asked to imply a <u>Bivens</u> action, 'our watchword is caution.'") (quoting <u>Hernandez</u>, 140 S. Ct. at 742).

The Supreme Court has directed lower courts to employ a two-step process in determining whether a <u>Bivens</u> remedy is available. First, the court must determine "whether the case presents 'a new <u>Bivens</u> context'—<u>i.e.</u>, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." <u>Egbert</u>, 142 S. Ct. at 1803 (alteration in original) (quoting <u>Ziglar</u>, 137 S. Ct. at 1859–60). "If the context is <u>not</u> new . . . then a <u>Bivens</u> remedy continues to be available." <u>Tun-Cos v. Perrotte</u>, 992 F.3d 514, 522–23 (4th Cir. 2019).

"But if the context is new, then courts must, before extending <u>Bivens</u> liability, evaluate whether there are 'special factors counselling hesitation in the absence of affirmative action by Congress.' If any such 'special factors' do exist, a <u>Bivens</u> action is not available." <u>Id.</u> at 523 (quoting <u>Ziglar</u>, 137 S. Ct. at 1857). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as will be in most every case—no <u>Bivens</u> action may lie." <u>Egbert</u>, 142 S. Ct. at 1803 (internal quotation marks and citations omitted).

Applying these principles in <u>Egbert</u>, the Supreme Court concluded that there was no <u>Bivens</u> remedy against a U.S. Border Patrol agent for excessive force in violation of the Fourth Amendment or retaliation in violation of the First Amendment. <u>Id.</u> at 1804–07. Prior to <u>Egbert</u>, the United States Court of Appeals for the Fourth Circuit reached a similar decision with respect to a federal inmate's claim that prison officials violated his First Amendment rights by retaliating against him for filing grievances. See <u>Earle v. Shreves</u>, 990 F.3d 774 (4th Cir. 2021). The Fourth Circuit held that the case presented a new <u>Bivens</u> context and that several special factors weighed against extending the <u>Bivens</u> remedy to the federal inmate's First Amendment claim. <u>Id.</u> at 779–81.

More recently, the Fourth Circuit was faced with determining "whether an inmate has a cause of action under the Eighth Amendment for money damages against federal prison officials based on 'degenerate' conditions of confinement." <u>Tate</u>, 54 F.4th at 841. The plaintiff alleged that he was sent to USP Lee's Special Housing Unit as punishment for a false and retaliatory incident report and that the conditions in that unit "were so degrading and detrimental that they constituted cruel and unusual punishment, in violation of the Eighth

Amendment." Id. at 842. Applying the two-step process described by the Supreme Court, the Fourth Circuit concluded that the plaintiff's Eighth Amendment conditions-of-confinement claim was "different from any Supreme Court decision finding a Bivens cause of action" and that the relief sought by the inmate "should be provided by Congress, if at all." Id. The Court emphasized that its conclusion was "based on the broad nature of the inmate's claim and the separation-of-powers implications of recognizing a Bivens cause of action in the new context of his claim." Id.

It is against this backdrop that the court evaluates whether a Bivens remedy exists for Ball's Eighth Amendment claims of excessive force.[1] The court recently addressed the same issue in the case of Hood v. Bureau of Prisons, No. 7:20-cv-00402, 2023 WL 361872 (W.D. Va. Jan. 20, 2023). The court concluded that the plaintiff's excessive force claims arose in a new context and that several special factors weighed against allowing a Bivens remedy for such claims. Id. at *11. For the reasons explained below, the court reaches the same conclusions in Ball's case and will therefore grant the defendants' supplemental motion to dismiss.

## A. New Context

The court first considers whether the case involves a "new context" for Bivens purposes. "The Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if even one distinguishing fact has a potential to implicate separation-of-powers considerations." Tate, 54 F.4th at 846 (emphasis in original)

---

[1] To the extent that Ball's amended complaint could be construed to assert claims of retaliation in violation of the First Amendment, such claims are foreclosed by existing precedent. See Egbert, 142 S. Ct. at 1807 (holding that "there is no Bivens action for First Amendment retaliation"); Earle, 990 F.3d at 779–81 (reaching the same decision in a retaliation case filed by a federal inmate).

(citing Egbert, 142 S. Ct. at 1805). For instance, "[a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; . . . the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Ziglar, 137 S. Ct. at 1860. Thus, "a radical difference is not required." Tun-Cos, 922 F.3d at 523.

Applying these principles, the court concludes that Ball's Eighth Amendment claims related to the use of force present a new Bivens context. Although Carlson also involved a claim under the same amendment, the Supreme Court has made clear that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez, 140 S. Ct. at 743. As previously noted, Carlson involved the alleged failure to provide medical treatment for an inmate's chronic asthma, which ultimately resulted in the inmate's death. Carlson, 446 U.S. at 16 n.1. Here, in contrast, Ball alleges that various defendants subjected him to cruel and unusual punishment in the form of beatings, threats, sexual assault, and painful restraints. Under the applicable standard, Ball's allegations are sufficiently different to constitute a new Bivens context. See, e.g., Greene v. United States, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (concluding that "Eighth amendment claims against federal corrections officers and officials for conspiracy, excessive force, sexual harassment, sexual assault, and failure to protect arise in 'a new context' and involve a 'new category of defendants,' and therefore are presumptively non-cognizable") (citations omitted); Silva v. United States, 45 F.4th 1134, 1137 (10th Cir. 2022) (noting that a federal inmate's claim of excessive force

"clearly constitutes an expansion of <u>Bivens</u>"); <u>Jean v. Smallwood</u>, No. 7:20-cv-00415, 2022 WL 17969091, at *5 (W.D. Va. Dec. 27, 2022) (Dillon, J.) (concluding that similar claims arose in new context, and emphasizing that "the Supreme Court has never ruled that a damages remedy exist for claims of excessive force by BOP officers against an inmate"); <u>see also cf.</u> <u>Tate</u>, 54 F.4th at 847 (concluding that the inmate's conditions-of-confinement claim was not authorized by <u>Carlson</u> but instead arose in a new context).

### B.   Special Factors

Because Ball's Eighth Amendment claims arise in a new context, the court must determine whether there are any "special factors counselling hesitation" in recognizing a cause of action under <u>Bivens</u>. <u>Ziglar</u>, 137 S. Ct. at 1857. "If there is even a single 'reason to pause before applying <u>Bivens</u> in a new context,' a court may not recognize a <u>Bivens</u> remedy." <u>Egbert</u>, 142 S. Ct. at 1803 (quoting <u>Hernandez</u>, 140 S. Ct. at 743). For the following reasons, the court concludes that several special factors counsel against allowing a <u>Bivens</u> remedy.

First, alternative remedies exist for federal inmates in Ball's position. <u>See id.</u> at 1804 ("If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new <u>Bivens</u> cause of action.'") (quoting <u>Ziglar</u>, 137 S. Ct. at 1858). In <u>Correctional Services Corp. v. Malesko</u>, the Supreme Court "explained that <u>Bivens</u> relief was unavailable because federal prisoners could, among other options, file grievances through an 'Administrative Remedy Program.'" <u>Id.</u> at 1806 (quoting <u>Malesko</u>, 534 U.S. at 74); <u>see also</u> 28 C.F.R. § 542.10 ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). According to the amended complaint

and its attached exhibits, Ball filed a request for administrative remedy alleging that he was assaulted by prison staff, and he then filed a regional appeal from the initial grievance decision. See Am. Compl. Exs., ECF No. 36-1. Although the BOP's remedial procedures do not provide the opportunity for an award of damages, "they nonetheless offer the possibility of meaningful relief and therefore remain relevant to [the court's] analysis." Earle, 990 F.3d at 780); see also Silva, 45 F.4th at 1141 (concluding that "the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring'" and, thus, that "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose [a federal inmate's] Bivens claim") (quoting Malesko, 545 U.S. at 74). Additionally, the Federal Tort Claims Act ("FTCA") authorizes claims for damages against the United States for certain intentional torts committed by federal officers, including assault and battery. See Millbrook v. United States, 569 U.S. 50, 54–57 (2013). Consequently, courts have recognized that the FTCA provides another alternative process to redress the type of harm alleged in this case. See, e.g., Mejia v. Miller, 53 F.4th 501, 506–07 (9th Cir. 2022) (concluding that the existence of alternative remedies, including claims for damages under the FTCA, weighed against recognizing a Bivens cause of action for excessive force against an officer of the Bureau of Land Management); Oliva v. Nivar, 973 F.3d 438, 444 (5th Cir. 2020) (explaining that the possibility of relief under the FTCA counseled against extending Bivens to a claim of excessive force brought against police officers at a Veterans Affairs hospital, even though the FTCA would "not provide the exact same kind of relief Bivens would").

11

Second, "legislative action suggesting that Congress does not want a damages remedy" counsels hesitation in recognizing a cause of action under Bivens. Ziglar, 137 S. Ct. at 1865. As the Supreme Court recognized in Ziglar, Congress enacted the Prison Litigation Reform Act approximately fifteen years after Carlson was decided, which "made comprehensive changes to the way prisoner abuse claims must be brought in federal court." Id. Although "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," it did not provide a damages remedy against federal prison officials. Id. This arguably "suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment." Id.; see also Springer v. United States, No. 21-11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022) (concluding that the fact that Congress had not extended Carlson to other types of Eighth Amendment claims counseled against extending Bivens to the plaintiff's conditions-of- confinement claim).

Third, there is reason to believe that "[t]he political branches are . . . 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" Tate, 54 F.4th at 828 (quoting Egbert, 142 S. Ct. at 1805). For example, Ball's claims related to the use of restraints implicate serious questions relating to the manner and extent of prison discipline, and the Fourth Circuit has recognized that "the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily does not interfere." Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980). Along the same lines, the Supreme Court has noted that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" and that the management of prisons is "peculiarly within the province of the legislative and executive branches of government." Turner v. Safley, 482

U.S. 78, 84–85 (1987) (internal quotation marks and citation omitted). Thus, based on the nature of Ball's claims, separation-of-powers concerns also counsel hesitation in extending Bivens in this context.

The Supreme Court has made clear that "[i]f there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy." Egbert, 142 S. Ct. at 1803 (quoting Hernandez, 140 S. Ct. at 743). Here, at least three special factors counsel hesitation. Therefore, consistent with other recent decisions, including this court's decision in Hood, the court concludes that a Bivens remedy is unavailable for Ball's claims under the Eighth Amendment. See Hood, 2023 WL 361872, at *12; see also Silva, 45 F.4th at 1141–42 (declining to extend Bivens to a federal inmate's Eighth Amendment excessive force claim); Greene, 2022 WL 13638916, at *4 (concluding that a Bivens remedy was unavailable for a federal inmate's claims of excessive force, sexual harassment, sexual assault, and failure to protect); Hower v. Damron, No. 21-5996, 2022 WL 16578864, at *4 (6th Cir. Aug. 31, 2022) (declining to extend Bivens to a federal inmate's Eighth Amendment claims involving alleged harassment and threats by officers and the warden's alleged failure to protect him from the same); Jean, 2022 WL 17969091, at *7 (concluding that a BOP inmate's excessive force claims were not cognizable under Bivens); Bone v. Ebbert, No. 3:19-cv-0112, 2022 WL 943036, at *9 (M.D. Pa. Mar. 29, 2022) (joining "the many others that have concluded . . . that extending Bivens to [an] Eighth Amendment excessive confinement in restraints claim would

be contrary to law") (footnote omitted). Therefore, the court will grant the defendants' supplemental motion to dismiss.[2]

## II.    Ball's Motions to Amend

The court turns now to Ball's motions to amend. The first motion seeks to name additional staff members at USP Lee as defendants. ECF No. 46. The motion indicates that Ball seeks to hold the additional staff members liable for the use of excessive force. In light of the court's conclusion that a <u>Bivens</u> remedy is unavailable for an Eighth Amendment claim of excessive force, the proposed amendments would be futile. Thus, the first motion will be denied on that basis.

In the second motion, Ball asserts that he has been subjected to adverse actions at USP Beaumont in retaliation for filing this case, and he seeks to amend the complaint to include retaliation claims against USP Beaumont. ECF No. 83. This motion will also be denied as futile. As noted above, "there is no <u>Bivens</u> action for First Amendment retaliation." <u>Egbert</u>, 142 S. Ct. at 1807; <u>see also</u> <u>Earle</u>, 990 F.3d at 781 (declining to extend <u>Bivens</u> to a federal inmate's claim that defendants violated his First Amendment rights by retaliating against him for filing grievances). Additionally, a <u>Bivens</u> clam cannot be brought against a federal agency or entity. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994). Therefore, USP Beaumont is not a proper defendant in a <u>Bivens</u> action, and amending the complaint to include claims against the prison would be futile.

---

[2] While this result may seem harsh and unjust given the particular facts alleged, it is the result compelled by existing precedent. And as another judge recently explained in reaching the same decision, "this court is obligated to faithfully apply binding precedent, such as <u>Egbert</u>, in the cases before it, no matter how egregious the allegations of abuse are." <u>Jean</u>, 2022 WL 17969091, at *7.

CONCLUSION

For the reasons stated, the defendants' supplemental motion to dismiss, ECF No. 85 is **GRANTED**, and Ball's motions to amend, ECF Nos. 46 and 83, are **DENIED**. In light of the court's decision, all other pending motions are **DENIED AS MOOT**. An appropriate order will be entered.

Entered: February 9, 2023

Digitally signed by Michael F.
Urbanski        Chief U.S.
District Judge
Date: 2023.02.09 16:53:28
-05'00'

Michael F. Urbanski
Chief United States District Judge